# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BENNY E. MATTHEWS | § | |
| | § | |
| V. | § | CASE NO. 4:05cv403 |
| | § | (Judge Brown/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be reversed and this case remanded for further proceedings.

## HISTORY OF THE CASE

Plaintiff originally filed applications for DIB and SSI alleging that he was unable to work beginning July 1, 2002, due to heart disease, obesity, and depression. The Commissioner denied Plaintiff's applications initially and on reconsideration. Pursuant to Plaintiff's request, the ALJ held a *de novo* hearing on October 6, 2004. Plaintiff and a vocational expert appeared and testified at the hearing.

The ALJ rendered a decision that Plaintiff was not disabled because he could perform other work existing in significant numbers in the national economy. In his decision, the ALJ found that Plaintiff had the following medically determinable impairments: atherosclerotic coronary artery disease, obesity, and depression. The ALJ determined that these conditions resulted in "severe"

impairments, but they were not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ indicated that Plaintiff's allegations were not credible to the extent alleged. The ALJ found that Plaintiff retained the residual functional capacity to perform light work, and he limited Plaintiff in the areas of balancing and climbing stairs. Additionally, the ALJ determined that Plaintiff could only perform occasional postural activities; he could not climb ladders; and he could not have any exposure to heights, machinery, or respiratory irritants. Mentally, the ALJ determined that Plaintiff had mild limitations in activities of daily living; mild limitations of social functioning; mild deficiencies with maintaining concentration, persistence, or pace; and no episodes of deterioration or decompensation.

At step four in the sequential evaluation process, the ALJ found that Plaintiff was unable to perform his past relevant work. At step five, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy based on the vocational expert's testimony. The ALJ determined that Plaintiff was not disabled and was not entitled to DIB or SSI at any time through the date of his decision. Since the Appeals Council concluded that no basis existed for review of the ALJ's decision, the ALJ's decision became the final decision of the Commissioner. Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged

disability.

3. The claimant's atherosclerotic coronary artery disease, obesity, and depression are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: lift and carry 20 pounds on an occasional basis and 10 pounds frequently; sit 6 of 8 hours; stand/walk 6 of 8 hours; limited balancing and climbing stairs; occasional posturals; no climbing ladders; no heights or machinery; and no exposure to respiratory irritants.

7. The claimant is unable to perform any of his past relevant work. 20 C.F.R. §§404.1565 and 416.965.

8. The claimant is an "individual closely approaching advanced age." 20 C.F.R. §§404.1563 and 416.963.

9. The claimant has a "high school (or high school equivalent) education." 20 C.F.R. §§ 404.1564.

10. The claimant has no transferrable skills from any past relevant work and/or transferability of skills is not an issue in this case. 20 C.F.R. §§ 404.1568 and 416.968.

11. If the claimant has the residual functional capacity of perform a significant range of light work. 20 C.F.R. §§ 404.1567 and 416.967.

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as Security Guard (39.000 in Texas and 550.000 in the United States); Surveillance System Monitor (1.200 in Texas and 14.00 in the United States); Gate Guard (10.000 in Texas and 120.000 in the United States); and Ticket Taker (15.000 in Texas and 200.00 in the United States).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 C.F.R. § 404.1520(g) and 416.920(g).

3

(TR 18).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Where the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* at 401. In applying the substantial evidence standard, the Court must carefully examine the entire record but must refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *and see* 20 C.F.R. §§ 404.1509 and 416.909. In determining whether an individual applicant is capable of performing any "substantial gainful activity," a five-step "sequential evaluation" is used. *See* 20 C.F.R. §§ 404.1520 and 416.920. In this case, the determination was made at the fifth step of the sequential evaluation process concerning whether Plaintiff could perform other work in the national economy. At the fifth step, the burden shifts to the Commissioner to prove that Plaintiff can perform other work. *Perez*

*v. Heckler*, 777 F.2d 298, 300-01 (5th Cir. 1985).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff complains that the ALJ failed to assess his mental residual functional capacity at step four (4) and alternatively, if the ALJ incorporated the residual capacity in his hypothetical to the vocational expert, any finding is not substantiated. The ALJ determined that Plaintiff had mild limitations in activities of daily living; mild limitations of social functioning; mild deficiencies with maintaining concentration, persistence, or pace; and no episodes of deterioration or decompensation.

Substantial evidence supports this mental residual functional capacity assessment.

The ALJ properly considered all treating evidence of record, and such evidence supported the ALJ's decision. No treating physician indicated that Plaintiff was totally unable to perform the residual functional capacity identified by the ALJ, or that Plaintiff was incapable of all work for twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214 (2002) (holding that the Act's definition of "disability" was properly interpreted as requiring an inability to engage in any gainful activity for a period lasting or expected to last a duration of twelve months); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (holding substantial evidence supported ALJ's decision when no treating physician indicated the claimant was incapable of all work).

Dr. Raza Sayed indicated that Plaintiff had no significant deficits in his "regular activities of daily living or significant deficits in self-expression, self concept, stress management, coping skills, organizing a task, following instructions, or maintaining self control." *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (finding that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability"); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) ("We give more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of your medical impairment(s).").

Dr. Sayed concluded that Plaintiff's depression and anxiety were stable with Zoloft. *See Johnson*, 864 F.2d at 348 (determining that when a condition can be controlled or remedied by medication or therapy, it cannot serve as a basis for a finding of disability); *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se). Dr. Sayed again indicated that there were no significant deficits in Plaintiff's regular activities

of daily living or significant deficits in self-expression, self concept, stress management, coping skills, organizing a task, following instructions, or maintaining self control.

Treatment records indicate that Plaintiff used the emergency facility at East Texas Medical Center (ETMC) for routine medical service. During the two-year period Plaintiff visited ETMC, staff physicians regularly opined on treatment forms that Plaintiff's mental status was normal. In Dr. Ronald W. Anderson's psychiatric consultative examination, Plaintiff reported that Zoloft was helping his depression. Plaintiff indicated that most of the time, his depression was only "moderate." Plaintiff's remote memory and concentration were fairly good, he had no delusions or obsessions, and his thought processes were concrete and organized. Dr. Anderson diagnosed Plaintiff with major depressive disorder, single episode, moderate. The ALJ recognized that Dr. Anderson assessed Plaintiff's global assessment of functioning (GAF) score at 50-61. The ALJ pointed out that Dr. Anderson made his GAF estimate at a time closer to Plaintiff's divorce and heart problems.

The ALJ specifically recognized that he must consider the opinions of the state agency medical consultants who evaluated the evidence at the initial and reconsideration levels of the administrative review process. *See* 20 C.F.R. §§ 404.1527(f) and 416.927(f); SSR 96-6p. The ALJ emphasized the state agency non-examining physicians' finding that Plaintiff's impairments were severe but did not meet or equal a listed impairment and were not otherwise disabling. The ALJ stated that he concurred with that finding because it is not inconsistent with the conclusions of the treating and consulting physicians.

The great majority of findings made by the state agency physicians support the ALJ's residual functional capacity assessment. In two separate psychiatric evaluations, state agency non-examining physicians determined that Plaintiff had no or mild restrictions of activities of daily living; mild or moderate difficulties in maintaining social functioning; mild difficulties in maintaining

7

concentration, persistence, or pace; and no episodes of decompensation. In two separate mental residual functional capacity assessments, state agency physicians determined that Plaintiff was not "markedly limited" in any category. In one assessment, state agency physicians specified that Plaintiff could understand, remember, and carry out detailed but not complex instructions and accept instructions and respond to changes in routine work settings.

Plaintiff pointed to only one mental residual capacity assessment in support of his argument that the ALJ's mental residual functional capacity assessment was not supported by substantial evidence. However, the mental capacity assessment that Plaintiff failed to mention directly contradicts his argument, as the state agency physician determined that Plaintiff was not significantly limited in his abilities to respond appropriately to criticism from supervisors. Additionally, they found that Plaintiff was able to complete a normal workday and workweek without interruptions from psychologically based systems and to perform at a consistent pace without an unreasonable number and length of rest periods.

The ALJ properly considered Plaintiff's testimony that he had not sought medical treatment for his depression or anxiety other than the Zoloft prescription from his family physician. Plaintiff testified Zoloft worked well and helped him socialize. However, Plaintiff indicated that he was no longer taking Zoloft, and Plaintiff reported that he had experienced an increase in symptoms since he had stopped taking the medication. *See Villa*, 895 F.2d at 1024 (holding that the failure to seek and follow regular course of prescribed treatment properly considered as an indication of nondisability).[1]

---

[1] At the October 2004 hearing, Plaintiff alleged that he was not taking Zoloft because he could not afford it. The Fifth Circuit has ruled that only if a claimant cannot afford treatment or medication and *can find no other way to obtain it*, will "the condition that is disabling in fact continue to be disabling in law." *Lovelace*, 813 F.2d at 59. Plaintiff's situation is not the scenario contemplated in *Lovelace*, as Plaintiff has not shown that he exhausted all the possible alternatives to receiving treatment at a reduced rate or free of charge. *See id.* Moreover, there is no indication

The ALJ properly took into account Plaintiff's daily activities and functional restrictions. Despite alleging mentally disabling symptoms, Plaintiff related that he walked for exercise, worked in the yard, cleaned the house, prepared his meals, shopped for groceries and clothes, handled his own money, did the laundry, performed household chores without assistance, and took care of his pets. When the ALJ asked Plaintiff if he was still suffering from depressive symptoms, Plaintiff answered, "[m]y problems now are due to anxiety attacks." Plaintiff reported that he got along with his family, and he did not have any problems completing tasks on time. Plaintiff indicated that although he did not like being criticized, he did not have any problems with people of authority telling him what to do.

In the case at bar, the ALJ appropriately evaluated Plaintiff's mental impairment according to the regulations and binding case law. First, the ALJ found that Plaintiff had a "severe" mental impairment pursuant to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). *See Stone*, 752 F.2d at 1101 (holding that an impairment is found "not severe" at step two in the sequential evaluation process when medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work).

Next, the ALJ evaluated Plaintiff's mental impairment according to the four functional areas contained in 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3), stating that Plaintiff's depression has caused no more than mild limitations in Plaintiff's daily activities; social functioning; concentration, persistence, and pace; and no episodes of decompensation. The ALJ based this finding on Plaintiff's medical records, the psychiatric consultative examination, the ultimate findings of the state agency medical consultants, and Plaintiff's own testimony. The ALJ then considered that Plaintiff made

---

that Plaintiff would be disabled without such treatment. *See Villa*, 895 F.2d at 1024 (declining to apply *Lovelace* under similar circumstances). Therefore, the ALJ properly considered Plaintiff's failure to seek treatment and his failure to comply with prescribed treatment as indications of nondisability.

9

several inconsistent statements; he had not sought medical treatment for his anxiety or depression other than the Zoloft prescription from his family physician; and when Plaintiff took Zoloft, it helped his symptoms. The record does not support additional mental limitations resulting from Plaintiff's depression. Contrary to Plaintiff's contention, the ALJ did not draw conclusions about Plaintiff's mental limitations from the Psychiatric Review Technique factors alone.

The final responsibility for the determination of an individual's residual functional capacity, of whether an individual's residual functional capacity prevents him from doing past relevant work, and the ultimate question of whether an individual is "disabled" under the Act, is reserved to the Commissioner pursuant to SSR 96-5p and 20 C.F.R. §§ 404.1527 and 416.927. *See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989). In this case, the ALJ's mental residual functional capacity assessment is consistent with the evidence of record and constitutes an appropriate resolution of any conflicts in the evidence. *See Richardson*, 402 U.S. at 399; *Lovelace*, 813 F.2d at 59 (noting it is the task of the ALJ to resolve conflicts in the evidence).

Because the ALJ determined that Plaintiff could not return to his past relevant work, the ALJ properly proceeded to step five in the sequential evaluation process, where the burden shifts to the Commissioner to show that other work exists that Plaintiff is able to perform. The Commissioner may meet this burden by obtaining the testimony of a vocational expert that there is work available which Plaintiff may perform.

The ALJ posed the following hypothetical question to the vocational expert:

> Now, let's say we have an individual with that vocational profile (age 53, 12th grade education, police academy training, work experience as a deputy sheriff and forklift operator). Assume that this individual doing an eight hour workday can sit for six hours, stand and walk four to six hours. Lift and carry 20 pounds occasionally, 10 frequently, and could push or pull to those weights. Assume that the person occasionally crawls, or squats or stoop or bend (sic). No

>working at heights or climbing of ladders [inaudible].  Should avoid
>excessive exposure to fumes or environmental pollutants.

(T.R. 399).

Plaintiff argues that the limitations included in the ALJ's hypothetical question did not reasonably incorporate the restrictions and impairments recognized by the ALJ's mental residual functional capacity assessment (that Plaintiff suffers "mild" limitations in activities of daily living and "mild deficiencies" in maintaining concentration, persistence, and pace).  Specifically, Plaintiff asserts the hypothetical's inclusion of "mild deficits in interrelating with co-workers, public, and supervisors" could be considered within the broad area of "social functioning" but that the hypothetical plainly excludes any reference to limitations in "activities of daily living" or "concentration, persistence and pace."

When an ALJ poses an incomplete hypothetical to a vocational expert, the ALJ cannot rely on the expert's opinions to find that a claimant is not disabled.  *Dziuk v. Barnhart*  2003 WL 21145745, *2 (5th Cir. 2003), *citing Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) ( " 'Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, ... a determination of non-disability based on such a defective question cannot stand.' ") (*quoting Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

The question really is whether the phrase in the hypothetical "mild deficits in interrelating with co-workers, public, and supervisors" reasonably incorporates Plaintiff's limitations in "activities of daily living" or "concentration, persistence and pace"?   The Court cannot state affirmatively that such is the case.  Accordingly, the Court recommends that the case be remanded for correction of the hypothetical.

## **RECOMMENDATION**

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be reversed and remanded in accordance with this report.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 2nd day of May, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE